UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
———

COREY L. HARRIS #231811,

                      Plaintiff,                             Case No. 2:06-cv-198

v.                                                     Honorable R. Allan Edgar

PATRICIA L. CARUSO, et al.,

                      Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff Corey L. Harris, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia L. Caruso, Deputy Warden Unknown Rapelje, Assistant Deputy Warden Unknown Immel, Corrections Officer Unknown MacDonald, and Corrections Officer Unknown Brandley. Plaintiff claims that on September 15, 2005, Defendants Rapelje, Immel, and MacDonald conducted an "administrative segregation wide" shakedown.  During this search, Plaintiff was subjected to an unlawful strip search by Defendant Brandley.  Plaintiff states that Defendants knew that if he did not comply with the search, he would be subjected to excessive force.

Plaintiff alleges that after the unlawful strip search, Defendant Brandley escorted Plaintiff to a 60 by 9 foot cage in the LMF segregation yard, where Plaintiff remained for 25 minutes. Upon return to his cell, he was told by another inmate that Defendant MacDonald had shaken down Plaintiff's cell and took eight cassette tapes and two religious books entitled "New World Order" and "New World Age."   Plaintiff did not receive a copy of a property removal receipt.   On September 22, 2005, Plaintiff asked Defendant MacDonald why his religious books had been taken and was told that the books were on the restricted vendor list and that prisoners were not allowed to possess such material.  Plaintiff further claims that prisoners in administrative segregation are not allowed to possess the same amount of personal property as those prisoners in general population.

Plaintiff claims that Defendants violated his rights under the First, Fourth, Eighth and Fourteenth Amendments.  Plaintiff seeks declaratory and injunctive relief, as well as punitive damages.

II.    <u>Lack of exhaustion of available administrative remedies</u>

Initially, the undersigned notes that Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter*, 534 U.S. at 516; *Booth*, 532 U.S. at 741.  A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.  *Brown*, 139 F.3d at 1104.  In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted.  *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000).  A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claims are the type of claims that may be grieved through the three-step prison grievance process.  *See* Mich. Dep't of Corr., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective

- 3 -

4/28/03); ¶ R (may grieve alleged "racial or ethnic discrimination or staff brutality or corruption" directly to Step III) (effective 4/28/03)**.**

The burden to allege and show exhaustion belongs to Plaintiff.  *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104.  This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits."  *Knuckles El*, 215 F.3d at 642.  Plaintiff attaches copies of the step I, II and III grievances, as well as the responses, as exhibits to his complaint.  However, Plaintiff's grievance and the subsequent appeals were rejected for violating MDOC policy because they attempted to address multiple issues in the context of one grievance.  In *Woodford v. Ngo*, 126 S. Ct. 2378, 2393 (2006)*,* the Supreme Court held that a prisoner fails to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.  Because Plaintiff's grievance was procedurally defective, the undersigned concludes that he failed to comply with the exhaustion requirement set forth in 42 U.S.C. § 1997e(a).

It is not clear whether Plaintiff may still grieve his claims.  Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely.  *See* Policy Directive 03.02.130, ¶¶ G-3, T, V.  The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997).  In addition, the United States Supreme Court has recently held that Prisoners must comply with applicable procedural rules, including deadlines, when exhausting administrative remedies as a precondition

- 4 -

to bring an action in federal court. *Woodford, et al. v. Ngo*, S. Ct. No. 05-416, Slip Op. p. 21 (Mar. 22, 2006).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Bradford v. Moore*, No. 97-1909, 1998 WL 476206, at *1 (6th Cir. Aug. 3, 1998). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997). Accordingly, the Court may dismiss Plaintiff's action without prejudice.

However, the undersigned notes that court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998). Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the undersigned recommends that the Court dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

### III.      Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a

- 5 -

claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that the strip search he was subjected to violated his rights under the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures by a representative of the government. *Hudson v. Palmer*, 468 U.S. 517, 522-526, 528 n 8 (1984). However, the Seventh Circuit has held that the Eight Amendment's prohibition against cruel and unusual punishment provides the sole textual source protecting inmates against improper searches and that prisoners do not retain any privacy rights under the Fourth Amendment. *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), *cert. denied*, 519 U.S. 1006 (1996). Other courts, including the Sixth Circuit, have recognized a limited Fourth Amendment right to privacy, even in the prison context. *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997), *cert. denied*, 522 U.S. 852 (1997); *Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987) (recognizing a limited Fourth Amendment right of prisoner to be free from observation of private bodily parts by guards of the opposite sex without penological justification). The Supreme Court has yet to definitively resolve the issue of whether convicted prisoners retain any right of privacy protected under the Fourth Amendment. *See*, *e.g.*, *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) ("The Supreme Court has not decided whether prison inmates retain rights cognizable under the Fourth Amendment.").

- 6 -

In *Bell v. Wolfish*, 441 U.S. 520 (1978), the Supreme Court examined the constitutionality of highly invasive visual body cavity inspections as part of a strip search of inmates conducted after every contact visit with a person from outside the institution. The Supreme Court assumed, without deciding, that inmates, both convicted prisoners and pretrial detainees, retained some Fourth Amendment rights upon commitment to a corrections facility. The Court found that the challenged searches did not violate the Fourth Amendment. 441 U.S. at 558. The Court stated, "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for a particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." 441 U.S. at 559. "We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt, as the District Court noted, that on occasion a security guard may conduct the search in an abusive fashion. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner. But we deal here with the question of whether visual body-cavity inspections can *ever* be conducted on less than probable cause. Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can." 441 U.S. at 560.

In *Hudson v. Palmer*, 468 U.S. 517 (1984) the Supreme Court addressed the question of whether an inmate had any right of privacy in his prison cell entitling him to protection of the Fourth Amendment against unreasonable searches and seizures. 468 U.S. at 522. The Court reviewed its cases establishing that prisons are not beyond reach of the Constitution as well as the fact that "imprisonment carries with it the circumscription or loss of many significant rights." 468

U.S. at 523-24.  "The applicability of the Fourth Amendment turns on whether the person invoking

its protection can claim a justifiable, a reasonable or legitimate expectation of privacy that has been

invaded by government action.  We must decide in Justice Harlan's words whether a prisoner's

expectation of privacy in his prison cell is the kind of expectation that society is prepared to

recognize as reasonable."  468 U.S. at 525 (citations omitted).  The Supreme Court went on to hold

that a prisoner has no reasonable expectation of privacy in his prison cell under the Fourth

Amendment.

>    Notwithstanding our caution in approaching claims that the Fourth
>    Amendment is inapplicable in a give context, we hold that society is
>    not prepared to recognize as legitimate any subjective expectation of
>    privacy that a prisoner might have in his prison cell, and that
>    accordingly, the Fourth Amendment proscription against
>    unreasonable searches does not apply within the confines of the
>    prison cell.  The recognition of privacy rights for prisoners in their
>    individual cells simply cannot be reconciled with the concept of
>    incarceration and the needs and objectives of penal institutions.
>
>    * * *
>
>    Determining whether an expectation of privacy is "legitimate" or
>    "reasonable" necessarily entails a balancing of interests.  The two
>    interests here are the interest of society in the security of its penal
>    institutions and the interest of the prisoner in privacy within his cell.
>    The latter interest, of course, is already limited by the exigencies of
>    the circumstances: A prison "shares none of the attributes of privacy
>    of a home, an automobile, an office, or a hotel room." *Lanza v. New
>    York*, 370 U.S. 139, 143-144 (1962).  We strike the balance in favor
>    of institutional security, which we have noted is "central to all other
>    correctional goals." *Pell v. Procunier*, 417 U.S. at 823.  A right of
>    privacy in traditional Fourth Amendment terms is fundamentally
>    incompatible with the close and continual surveillance of inmates and
>    their cells required to insure institutional security and internal order.
>    We are satisfied that society would insist that a prisoner's expectation
>    of privacy always yield to what must be considered the paramount
>    interest of institutional security.  We believe that it is accepted by our
>    society that "[l]oss of freedom of choice and privacy are inherent
>    incidents of confinement. *Bell v. Wolfish*, 441 U.S., at 537.

* * *

> Our holding that respondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy for calculated harassment unrelated to prison needs. . . .   The Eighth Amendment always stands as a protection against "cruel and unusual punishments."

468 U.S. at 525-26, 527-28, 530.

In its landmark decision in *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), *cert. denied*, 117 S. Ct. 506 (1996), the Seventh Circuit held that the Fourth Amendment does not protect privacy interests of prison inmates. 69 F.3d at 150.  *Johnson v. Phelan* involved the claim of a male pretrial detainee at the Cook County Jail.  He complained that female guards were assigned to monitor male inmates' movements and could see the men naked in their cells, in the shower and using the toilet.  The case involved visual rather than tactile searches.  The Seventh Circuit found that after the Supreme Court's decision in *Hudson v. Palmer*, 468 U.S. 517, 526-30 (1984), prisoners lack any reasonable expectation of privacy under the Fourth Amendment.[1]  The Seventh Circuit stated, "We therefore think it best to understand references to 'privacy' in *Canedy [v. Boardman*, 16 F.3d 183 (7th Cir. 1994)] and similar cases as invocation of the [E]ighth [A]mendment's ban on cruel and unusual punishments" applicable to the states through the Fourteenth Amendment's Due Process Clause.  69 F.3d at 147.  The Seventh Circuit held that, "One who makes a claim under the cruel and unusual punishments clause must show that the state has created risk or inflicted pain pointlessly.  'After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes

---

[1] In a subsequent decision, *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995), the Seventh Circuit noted that rights of all kinds are much diminished in the prison setting.  The panel was able to envision possible extreme invasions of the interior of a prisoner's body that might constitute a Fourth Amendment violation, but held that prison officials were entitled to qualified immunity on a prisoner's claim that involuntary catheterization of a state prisoner suspected of drug use violated his constitutional rights.

cruel and unusual punishment.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  The Seventh Circuit upheld the policy over the constitutional challenge.[2]

In *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993) (*en banc*) the Ninth Circuit addressed the constitutionality of a Washington prison policy requiring male guards to conduct random, non-emergency, suspicionless, clothed body searches of female prisoners.  The searches included guard's "use of a flat hand and pushing motion across the inmates's crotch area," "pushing inward and upward when searching the crotch and upper thigh of the inmate," and requiring that all seams in the leg and crotch area be squeezed and kneaded." *Id.* at 1523.  Guards were also to "search the breast area in a sweeping motion so that the breasts [would] be flattened." *Id.*  The Ninth Circuit declined to address the privacy claims of female inmates under the Fourth Amendment.

> Whether such rights exist – whether inmates possess privacy interests that could be infringed by the cross-gender aspect of otherwise constitutional searches – is a difficult and novel question, and one that cannot be dismissed lightly.  But we cannot assume from the fact that the searches cause immense anguish that they therefore violate protected Fourth Amendment interests.  Far from it, our prior case law suggests that prisoners legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited.  *See Grummett v. Rushen*, 779 F.2d 491, 495-96 (9th Cir. 1985) (pat-down

---

[2] The Seventh Circuit noted at the outset that the "animating theme" of the Supreme Court's jurisprudence over the last twenty years has been "the requirement that judges respect hard choices made by prison administrators." 69 F. 3d at 145 (citing *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-50 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 561-63 (1974)).  Under the Due Process Clause, the question is whether the regulation is reasonably related to legitimate penological interests. 69 F.3d at 146 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  The court held that, "Surveillance of prisoners is essential, as *Wolfish* establishes.  Observation of cells, showers and toilets is less intrusive than the body-cavity inspections *Wolfish* held permissible.  Guards do the surveillance.  Male guards and female guards too – for Title VII of the Civil Rights Act of 1964 opens prisons to women and requires states to hire them unless sex is a bona fide occupational qualification, a high standard of necessity." 69 F.3d at 146.  The court found that cross-sex monitoring made good use of staff, as it is more expensive to have a group of guards dedicated to shower and toilet monitoring than to have guards be able to fulfill all guard duties.  "[A]n interest in efficient deployment of staff supports cross-sex monitoring." 69 F.3d at 147.  "Cross-sex monitoring reduces the need for prisons to make sex a criterion of employment and therefore reduces the potential conflict with Title VII and the equal protection clause." *Id.*

> searches of male inmates that included groin area by female guards do not violate Fourth Amendment); *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (occasional visual strip searches of male inmates by female guards do not violate the Fourth Amendment).

986 F.2d at 1524.  The Ninth Circuit found that the plaintiffs' claims were more appropriately analyzed under Eighth Amendment standards.  "Although the inmates here may have protected privacy interests in freedom from cross-gender clothed body searches, such interests have not yet been judicially recognized.  On the other hand, the Eighth Amendment right of incarcerated persons to be free from the unwarranted infliction of pain is clearly established."  986 F.2d at 1525.  In reaching its decision that the policy authorizing random, suspicionless, cross-gender searches constituted an "infliction of pain" to which the defendants were deliberately indifferent, the Ninth Circuit relied heavily upon evidence that 85% of the inmates had histories of serious abuse, that defendants were aware of these conditions, and the serious psychological harm resulting from the searches.  *See Hovater v. Robinson*, 1 F.3d 1063, 1067 (10th Cir. 1993) (analyzing *Jordan v. Gardner*).  The *Jordan v. Gardner* case did not involve any question of damages.  The Ninth Circuit simply upheld the district court's injunction.

In *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997) the Ninth Circuit reiterated the novel questions raised by Fourth Amendment assertions of privacy in the prison context and distinguished the Eighth Amendment aspects of the *Jordan v. Gardner* case.  In *Somers*, a California prisoner asserted that shower observation and visual body cavity searches by female guards violated his rights under the Fourth and Eighth Amendments.  Plaintiff complained that the female guards "pointed at him"and "joked among themselves during the searches and showers," behavior Somers characterized as "gawking."  109 F.3d at 616.  The Ninth Circuit found it "highly questionable even

today whether prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex or from viewing of their unclothed bodies by officials of the opposite sex." 109 F.3d at 622. The court held that the defendant prison officials were entitled to qualified immunity upon Somers' Fourth Amendment claim. Under the Eighth Amendment, the Ninth Circuit held that Somers claim failed to satisfy either the objective or subjective components of an Eighth Amendment claim and that defendants were entitled to judgment in their favor as a matter of law. Subjectively, Somers did not assert that the searches occurred without any penological justification. His assertions that the guards joked among themselves did little to prove that the guards acted with a sufficiently culpable state of mind. With regard to the objective component, the court found that the challenged conduct was not "objectively harmful enough to establish a constitutional violation." 109 F.3d at 622. "We are mindful of the realities of prison life, and while we do not approve, we are 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.'" 109 F.3d at 622 (quoting *Morgan v. Ward*, 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988)). "Cross-gender searches cannot be called inhumane and therefore do not fall below the floor set by the objective component of the Eighth Amendment." 109 F.3d at 623.

The Ninth Circuit distinguished its holding in *Jordan v. Gardner* as involving significantly distinguishable facts: (1) the established preexisting mental conditions of the female inmates [resulting from sexual and physical abuse], which were exacerbated by the random searches, and (2) the intrusive and physical nature of the pat down searches that involved "kneading" of the breasts and groin area of female inmates. 109 F.3d at 623-24. The *Somers* case did not involve any physical contact. The Ninth Circuit concluded that "To hold that gawking, pointing and joking

- 12 -

violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eight Amendment test and render it absurd." 109 F.3d at 624.

As noted above, the Sixth Circuit has recognized a prisoner's limited constitutional right under the Fourth Amendment to be free from observation of his private bodily parts by officers of the opposite sex, without penological justification. *Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987). The *Kent* court recognized a limited right of privacy that protects prisoners "from being forced unnecessarily to expose their bodies to guards of the opposite sex." 821 F.2d at 1227. The *Kent* case arose from the complaint of a Michigan prisoner, who alleged that female prison guards had unrestricted access to all areas of the housing unit, including the toilet and shower areas. The Sixth Circuit reversed dismissal of the complaint, finding that the complaint stated a claim in that prison officials have a constitutional duty to afford reasonable accommodation to a limited privacy interest retained by prisoners in this regard. *Id.* at 1226-28.[3] On motion for reconsideration, the court determined that plaintiff's claim must be judged by the standard of reasonableness established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987).[4]

On remand, Chief Judge Julian Abel Cook examined the prison policy at issue in that case to determine whether it was reasonably related to legitimate penological goals under the *Turner* test. Judge Cook found that the policy of the Department of Corrections of hiring women on a

---

[3] In two unpublished decisions, the Sixth Circuit has indicated that a necessary element of any such privacy claim is that the search be conducted by guards to humiliate or degrade the prisoner. *See*, *Henry v. Pogats*, No. 93-2462, 1994 WL 462129, at * 2 (6th Cir. Aug. 25, 1994); *Butler v. Jewell*, No. 88-1834, 1989 WL 16851, at * 3 (6th Cir. Feb. 17, 1989).

[4] The Sixth Circuit recently reemphasized the deference courts should accord the difficult choices made by prison administrators. *See Bazetta v. McGinnis*, __ F.3d __, 1997 WL 538872, at * 5 (6th Cir. Sept. 4, 1997); *Muhammad v. Bush*, No. 95-1887, 1997 WL 434382 (6th Cir. July 31, 1997) (upholding grant of summary judgment in favor of defendants upon male inmate's claim that pat-down search by female guards violated his First Amendment rights).

nondiscriminatory basis is a legitimate penological interest and that this interest required placing women guards in positions within the correctional facility where they would have contact with inmates on a daily basis.  "Allowing the women guards to have official responsibilities including responsibility of escorting an inmate to the shower is rationally connected to this governmental interest."  *Kent v. Johnson*, No. 84-cv-71307-DT, 1990 WL 507413, at * 4 (E.D. Mich. Aug. 3, 1990).  Other courts have likewise found that occasional exposure of an inmate's body to a guard of the opposite sex is justified by the interests of female guards in equal employment opportunity.

> We recognize as legitimate both the interest in providing equal employment opportunities and the security interest in deploying available staff effectively.  Our circuit's law respects an incarcerated prisoner's right to bodily privacy, but has found that assigned positions of female guards that require only infrequent and casual observations, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference.

*Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988); *see also Johnson v. Phelan*, 69 F.3d at 146-151; *Cornwell v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992); *Cookish v. Powell*, 945 F.2d 441, 448 (1st Cir. 1991).[5]

On infrequent occasions, the Sixth Circuit has been called upon to address the Fourth Amendment privacy claims of prisoners in relation to various types of searches conducted by guards. In *Cornwell v. Dahlberg*, 963 F.3d 912 (6th Cir. 1992), the Sixth Circuit remanded for a new trial the Fourth Amendment privacy claim of a prisoner subjected to an outdoor strip search before

---

[5] In its *en banc* decision in *Spear v. Sowders*, 71 F.3d 626, 629 (6th Cir. 1995) (*en banc*) the Sixth Circuit acknowledged that strip and visual body cavity searches are "embarrassing and humiliating," but nonetheless upheld such a search of a prison visitor.  "A detention facility is a unique place fraught with serious security dangers.  Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence.  *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979).  This conclusion is not the result of some great leap of logic.  Prisons are dangerous and filled with law-breaking because that is where the criminals are.  Even the most secure prisons are dangerous places for inmates, employees and visitors."  71 F.3d at 630.

several female correctional officers following a prison disturbance.  The Sixth Circuit's opinion did

not address the issue of qualified immunity.

In an unpublished decision, the Sixth Circuit addressed a male prisoner's claim that

a pat-down search by a female guard violated his constitutional rights. The Sixth Circuit disagreed

and stated as follows:

> A prisoner has no legitimate expectation of privacy in his cell.  *See*
> *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).  A pat-down search,
> which is by definition of short duration and minimal obtrusiveness,
> is not unconstitutional, even when performed by a female officer.
> *Timm v. Gunter*, 917 F.2d 1093, 1100 (8th Cir. 1990), *cert. denied*,
> 111 S. Ct. 2807 (1991).  Furthermore, Brown failed to demonstrate
> that a pat-down search involves a wanton infliction of pain which is
> barred by the Eighth Amendment.  *See Wilson v. Seiter*, 111 S.Ct.
> 2321, 2323 (1991).

*Brown v. Withrow*, No. 92-1765, 1993 WL 15141, at * 1 (6th Cir. Jan. 22, 1993).

Furthermore, the Sixth Circuit upheld a grant of summary judgment in favor of

defendants upon an inmate's Fourth Amendment privacy claim that a body cavity search to retrieve

a contraband lighter secreted within her vagina violated her constitutional rights.  *Henning v.

Sowders*, No. 93-5126, 1994 WL 83259 (6th Cir. May 14, 1994).  In addition, in *Roden v. Sowders*,

84 Fed. Appx. 611 (2003), the Sixth Circuit held that the strip search of a male prisoner in the

presence of a female officer did not violate the prisoner's rights under the Fourth or Eighth

Amendments, despite the fact that the officer allegedly laughed at the prisoner when he was naked.

*Id.* at 613.

Based upon a review of the above cases, the undersigned concludes that the facts of

this case, as alleged by Plaintiff in his complaint, fail to implicate the Fourth Amendment.

Therefore, the undersigned recommends that the court dismiss Plaintiff's Fourth Amendment claims for lack of merit.

Plaintiff claims that the strip search violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich* , 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Plaintiff claims that he was subjected to a strip search without probable cause. Plaintiff fails to make any specific allegations regarding the nature of the search. In the opinion of the undersigned, the facts, as alleged by Plaintiff in his complaint, fail to rise to the level of an Eighth Amendment claim.

Plaintiff claims that the confiscation of his audio cassettes and religious books violated his First Amendment rights. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However,

as a prisoner, Plaintiff's constitutional rights are subject to severe restriction.  *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote).  *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness."  *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25.  In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . ., and not the courts, . . . make the difficult judgments concerning institutional operations."  *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91.  First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.  *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984).  Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate."  *Turner*, 482 U.S. at 90.  Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test."  *Id.* at 90.  "Prison officials need not show that "*no* reasonable method exists by which

- 17 -

[prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

In this case, Plaintiff fails to allege any facts indicating that the confiscated property was necessary to his religious practice. Therefore, because Plaintiff has failed to state the manner in which his ability to practice his religion has been burdened, the undersigned recommends dismissal of Plaintiff's free exercise claims.

Plaintiff also appears to be claiming that the seizure of his property as "contraband" violated his due process rights under the Fourteenth Amendment. The provision regarding the Restricted Publications List is contained in MDOC Policy Directive 05.03.118.

Policy Directive 05.03.118 provides in pertinent part:

N.      Prisoners shall not be allowed to receive the following items or publications as they are considered to be a threat to the order and security of an institution or to the rehabilitation of prisoners:

* * *

3.      Material describing or showing acts of homosexuality, sadism, masochism, bestiality, sexual acts involving children, or any other unlawful sexual behavior;

O.      If staff believes that mail to a prisoner is in violation of these guidelines a hearing shall be held promptly to determine whether the mail meets the criteria for an excluded item or publication.

P.      If the hearing upholds the exclusion and the excluded item is a newspaper, magazine, catalog, book or similar publication, the institution shall submit a copy of the hearing report and a copy of the publication to the Deputy Director, BCF, for final determination. If the Deputy Director reverses the hearing decision, the mail shall be given to the prisoner. If the Deputy Director agrees with the results of the hearing, the publication will be placed on the Department's Restricted Publication List. Once a publication is placed on the Restricted Publication List, an institution may exclude it without

further hearing; however, notice of the rejected mail shall be sent to the prisoner stating that the publication is on the List.

Q.     The Restricted Publication List will be maintained in the Office of the Deputy Director, BCF.  Information on additions or deletions to this list will be provided to all institutions.

R.     A decision to exclude any item must be based on a clear showing that the item is one of those listed above or that admission of the material will jeopardize the security and good order of the institution, or will interfere with a prisoner's rehabilitation.  Exclusion is appealable through the grievance procedure.

It is clear from Policy Directive 05.03.118 that in order for a publication to be placed on the Restricted Publication List, it must have first received a hearing in which it was determined to be a threat to the order and security of the institution or to the rehabilitation of prisoners.  In addition, Plaintiff had the opportunity to appeal the confiscation of the restricted materials through the grievance process.  Therefore, if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law.  In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law.  This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false.  The Due Process clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process."  *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself

unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

Finally, Plaintiff claims that as a segregation prisoner, he is allowed to possess less property than a prisoner in the general population in violation of his Fourteenth Amendment equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). In this case, Plaintiff's equal protection claim lacks merit because prisoners in the general population are not similarly situated to those in administrative segregation. Therefore, the undersigned recommends dismissal of Plaintiff's equal protection claims.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

 /s/ Timothy P. Greeley 
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 18, 2006

- 20 -

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).